# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ANTHONY MARTINEZ, | Case No. 1:14-cv-00578-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Steven Anthony Martinez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-83. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge, and the matter was assigned for all purposes to Magistrate Judge Sheila K. Oberto. (Docs 8, 9.)

## II.   FACTUAL BACKGROUND

Plaintiff was born on September 18, 1989 (Administrative Record ("AR") 120), he completed the tenth grade, and has no vocational or technical certification or training. (AR 33.)

Plaintiff filed an application for SSI on July 23, 2010, alleging disability beginning on September 18, 1989, due to Attention Deficit Hyperactivity Disorder ("ADHD"). (AR 120, 142.)

**A.   Relevant Evidence**

On January 4, 2011, Plaintiff underwent a psychological evaluation with Richard Engeln, Ph.D. (AR 513-19.) Dr. Engeln administered a Wechsler Adult Intelligence Scale 4th Edition (WAIS IV), Wechsler Memory Scale III, Bender-Gestalt Test II, Trails A and Trails B, Mental Status Exam, and took a diagnostic history. (AR 513.)

Plaintiff reported that he lived with his parents; he attended high school through the 11th grade, but did not graduate; and attended special education classes. (AR 513-14.) On mental status examination, there was no evidence of delusions, hallucinations, or confusion. Plaintiff's speech was easily understood, appropriate in form and association, and he presented as alert, oriented, and with positive social skills. (AR 515.) Plaintiff's fund of knowledge, memory for personal events, and organization of history were positive and consistent with his intellectual level. (AR 516.)

As to the testing, Dr. Engeln reported the "[t]est results varied in terms of credibility. Obtained intellectual scores appeared to be valid measurements of ability." (AR 516.) On the WAIS-IV, Plaintiff's scored as follows:

> Verbal Comprehension = 74; Perceptual Reasoning = 75; Working Memory, an auditory function, = 69, high in the mild range of mental retardation; Processing Speed, a visual grapho-motor function = 74, borderline; Full Scale IQ = 69, high in the mild range of mental retardation. Working memory, an immediate memory functioning for non-meaningful material, reflecting processing skills, was measured 79, high borderline.

(AR 516.) Dr. Engeln found the "protocol, in general, is a valid representation of [Plaintiff's] abilities; however, concentration issues, and patient's tendency to shut down and withdraw when multiple units of information are presented at one time detracted from memory measurements.

These do appear to be ongoing qualities of his personality, but they certainly intrude on measurement." (AR 517.) Dr. Engeln provided the following assessment:

> [Plaintiff] appears mentally competent to manage funds, and does not report any substance abuse issues. As a young adult, continued [advice] and support around financial planning would be encouraged. Verbally, cognitively, and socially, [Plaintiff] is capable of entry level job adjustment, in a context where instructions are unidimensional and normal supervision is provided. Concentration and social skills are adequate for work adjustment. [Plaintiff] is able to perform one-to-two-step, simple job instructions, but not able to receive complex or technical job instructions. There do not appear to be any psychological restrictions to job adjustment. Primary restrictions to job adjustment would be medical-physical in nature.

(AR 518.)

State agency physician R. G. Chahal, M.D., reviewed Plaintiff's records and opined Plaintiff could understand and remember simple instructions; maintain concentration, persistence, and pace for 2-hour periods sufficient to complete an eight-hour workday; he had limitations in the ability to interact with the general public, but was capable of interacting with co-workers and supervisors; and could adapt to occasional changes in a work routine and make simple decisions commensurate with his level of work. (AR 553.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 54-57, 68-76.) On June 20, 2012, the ALJ held a hearing. (AR 28-47.) Plaintiff testified, through the assistance of counsel, and a vocational expert also gave testimony. (AR 39-67.)

On July 27, 2012, the ALJ issued a decision finding Plaintiff not disabled. (AR 16-23.) The ALJ determined Plaintiff has the Residual Functional Capacity ("RFC")[2] to lift and carry 10 pounds occasionally and less than 10 pounds frequently; sit, stand, and/or walk for two hours in an eight-hour day; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but can never

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

climb ladders, ropes, or scaffolds; may frequently balance, and should avoid even moderate exposure to hazardous machinery and heights; and can perform simple routine tasks. (AR 19.)

The ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since July 23, 2010, the date of his application; (2) has the following severe impairments or combination of impairments: congenital heart disease – transposition of great vessels – status post-surgical correction, borderline intellectual functioning, conduct disorder, and a history of ADHD; (3) does not have an impairment or combination of impairments that meets or medically equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has no past relevant work; but (5) he is able to perform alternative work that exists in significant numbers in the national economy. (AR 16-23.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 12.) On January 13, 2014, the Appeals Council denied review. (AR 6-11.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

**C.    Plaintiff's Contention on Appeal**

Plaintiff contends the ALJ erred in failing to find him disabled under Listing 12.05C at the Third Step. The parties agree the ALJ erred in considering Listing 12.05C, but they disagree whether remand for further proceedings or reversal for an award of benefits is the appropriate remedy.

### III.    SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.   APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. §§ 404.1520(f),

416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.    DISCUSSION

**A.    The ALJ's Consideration of Listing 12.05C Was Error**

The parties agree the ALJ erred in finding Plaintiff did not meet the elements of Listing 12.05C at the Third Step of the Sequential Evaluation.  The parties disagree, however, as to the appropriate remedy.  Plaintiff maintains reversal with an award of benefits is required because he meets the requirements of Listing 12.05C.  The Commissioner contends remand for further consideration, rather than reversal, is warranted so the ALJ can make factual findings that are necessary to determine whether Plaintiff meets Listing 12.05C.

At the Third Step, the ALJ determines whether a claimant's impairment meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.  *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).  The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to permit a person from doing any gainful activity."  *Id.* (citing 20 C.F.R. § 404.1525); *see also*, 20 C.F.R. § 416.925.  If a claimant meets or equals a listed impairment, he or she will be found disabled at this step without further inquiry.  *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of establishing that his or her impairment satisfies all the criteria of a particular listing.  *Id.*  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Here, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listing.  (AR 18.)  The ALJ specifically considered Listing 12.05C, but determined Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60

6

through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (AR 19.)

Listing 12.05C is satisfied where a claimant shows (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation. 20 C.F.R.pt 404, subpt. P, app. 1, § 12.05C; *see also Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013)

### 1. Plaintiff Has a Facially Qualifying IQ Score

The Commissioner contends there is conflicting evidence whether Plaintiff has a valid IQ score between 60 and 70. Although Dr. Engeln assessed Plaintiff with a Full Scale IQ of 69, he only emphasized Plaintiff's scores in the borderline and average range in his conclusion. Dr. Engeln did not mention Plaintiff's lower score in the mild range of mental retardation and opined Plaintiff would be able to perform simple work, concentrate, and interact appropriately with others. It appears, from this conclusion, that Dr. Engeln only endorsed Plaintiff's higher test scores in the borderline and average ranges, and not the lower IQ score of 69. The Commissioner argues this is consistent with Dr. Chahal's opinion that Plaintiff did not meet or equal any of the Listings.

Plaintiff responds that Dr. Engeln did refer to the lower scores in the mental retardation range later in his report. Nonetheless, even if Dr. Engeln had attributed the cause of Plaintiff's difficulties to a diagnosis of borderline intellectual functioning rather than mild mental retardation, it makes no difference because a diagnosis is not required under the Listing. As to Dr. Engeln's opinion that Plaintiff could work, Plaintiff contends it was expected that Plaintiff would be found capable of working from a mental standpoint – it is only individuals with an IQ of 59 or less who are disabled solely as a result of mental deficiencies. Under Listing 12.05C, however, it is Plaintiff's lower IQ of 69 in combination with his physical limitation to sedentary work that render him disabled under the Listing. Dr. Chahal's analysis that Plaintiff does not meet or equal a Listing considers *only* Plaintiff's mental limitations, not his other severe conditions which cause him limitation.

Plaintiff scored a 69 on a full-scale IQ test administered by Dr. Engeln. On its face, this is a qualifying score, but the question is its validity. The ALJ provided no reason for finding that Plaintiff does not indeed have a valid verbal, performance, or full scale IQ of 60 to 70. The Ninth Circuit has not addressed the factors an ALJ may consider to determine the validity of an IQ score, but it is within the ALJ's province to decide whether an IQ score is valid. *Thresher v. Astrue*, 283 Fed. Appx. 473, 475 n.6 (9th Cir. 2008) (unpublished) ("We do not doubt that an ALJ can decide that an IQ score is invalid . . . [but] [w]e have never decided what information is appropriately looked to in deciding validity"). Courts outside the Ninth Circuit permit an ALJ to consider several factors in assessing the validity of test results, such as evidence of malingering or feigning results, daily activities inconsistent with the alleged impairment, and psychologists' opinions that are supported by objective medical findings. *Wedge v. Astrue*, 624 F. Supp. 2d 1127, 1131 (C.D. Cal. 2008) (citing *Clay v. Barnhart*, 417 F.3d 922, 929 (8th Cir. 2005) (ALJ may disregard a low IQ score where the evidence shows substantial malingering and daily activities inconsistent with the level of impairment alleged), *Soto v. Secretary*, 795 F.2d 219, 222 (1st Cir. 1986) (ALJ need not accept the IQ score if there is a substantial basis for believing that the plaintiff is feigning results), *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (valid IQ is not conclusive when the score is inconsistent with other evidence in the record and claimants' daily activities)).

The ALJ noted Plaintiff's full scale IQ score of 69, but refused to find this a valid score. In stating there was no valid IQ score, the ALJ failed to discuss what factors undercut the validity of Dr. Engeln's test results. (*See* AR 19.) Here, there was no stated basis for finding the IQ score invalid, but Dr. Engeln's opinion is equivocal as to validity.[3] Although Dr. Engeln stated Plaintiff's intellectual scores "appeared to be valid measurements of ability," he also stated that the "[t]est results varied in terms of credibility." (AR 516.) Dr. Engeln further noted that the "protocol, in general, is a valid representation of [Plaintiff's] abilities . . . but concentration issues,

---

[3] Dr. Engeln and Dr. Chahal found Plaintiff capable of simple repetitive work, but this is not a reason in itself to invalidate the IQ score. As Plaintiff persuasively argues, an IQ between 60 and 70 would not necessarily preclude work, which is why Listing 12.05C contains the additional elements: deficient in adaptive functioning as well as additional impairments that significantly impact work-related function. In other words, an IQ score between 60 and 70 does not, by itself, create disability such that an opinion that one can work with an IQ between 60 and 70 is dispositive of validity of the test results. Nonetheless, this may be one factor in the ALJ's consideration of validity of the test results.

and [his] tendency to shut down and withdraw when multiple units of information are presented at one time detract from memory measurements."  It is the ALJ's duty to resolve ambiguities in the record and make appropriate findings. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

As a general rule, remand is warranted where additional administrative proceedings could remedy the defects in the Commissioner's decision. *See Harmon v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  There is an outstanding issue regarding the validity of Plaintiff's full scale IQ score that requires weighing the evidence and potentially developing the record further – which must be done by the fact finder.  The apparent equivocation in Dr. Engeln's report regarding the validity of the test scores is an issue the ALJ must consider in the first instance along with any other evidence in the record that bears on the validity of Plaintiff's IQ score.  *See Thresher*, 283 Fed. Appx. at 475.

## 2. There is Evidence That Plaintiff Has Deficits in Adaptive Functioning

Plaintiff contends the absence of deficits in adaptive functioning was not a stated reason the ALJ gave for finding Plaintiff did not meet Listing 12.05C as the ALJ did not consider whether Plaintiff suffered deficits in adaptive functioning.  Plaintiff maintains the record is clear that he has met this element.   The Commissioner asserts the ALJ should consider this in the first instance upon remand.

Pursuant to Listing 12.05C, mental retardation is "characterized by significant subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05C.  Beyond a qualifying IQ score, which establishes "significant subaverage general intellectual functioning," a claimant must demonstrate deficiencies in adaptive functioning. When determining whether a claimant demonstrates deficits in adaptive functioning, courts consider a variety of factors, including a claimant's poor academic performance, participation in special education, and work history. *See, e.g., Rocha ex rel. A.R. v. Astrue*, No. CV–11–3006–CI, 2012 WL 4903586, at *4–5 (E.D. Wash. Oct.16, 2012); *Lewis v. Astrue*, No. CV10–63–SU, 2011 WL 1085254 (D. Or. Feb.15, 2011), *recommendation adopted by Lewis v. Astrue*, NO. CV–10–63–SU, 2011 WL 1042676 (D.Or. Mar.22, 2011); *Ware ex rel. v. Shalala*, 902 F. Supp. 1262, 1271 (E.D.Wash.1995); *Christner v. Astrue*, 498 F.3d 790, 793 (9th Cir.

9

2007)). Pursuant to the Diagnostic and Statistical Manual of Mental Disorders IV, Text Revisions ("DSM–IV–TR"), American Psychiatric Association (4th ed. 2000), deficits in adaptive functioning must be demonstrated in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM–IV–TR at 49.

There is evidence that Plaintiff suffers from deficits in adaptive functioning. Plaintiff did not finish high school and was enrolled in special education classes during the course of his academic career. (AR 33.) He lives at home with his mother (AR 33), he had a job but was fired because he was unable to "take down the orders right" (AR 35), and has been unable to pass the driver's license exam (AR 33). The ALJ entirely failed to consider the second element, and there is substantial evidence in the record to support a finding that Listing 12.05C's second prong has been satisfied. The ALJ should consider the relevant evidence and make a determination about whether Plaintiff has satisfied this element.

### 3. Plaintiff Has Additional and Significant Limitations of Function

"An impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir.1987). "A finding of a severe impairment at the Second Step is a per se finding of an 'impairment imposing additional and significant work-related limitations of function' as defined in Listing 112.05." *Robinson v. Cmm'r Soc. Sec. Admin.*, 2015 WL 925609, at * 5 (E.D. Cal. Mar. 3, 2015), *Washington v. Colvin*, No. 2:14-cv-0051-KJN, 2013 WL 4517911, at *8 (E.D.Cal. Aug.26, 2013) (citing *Fanning*, 827 F.2d at 633). The Ninth Circuit has indicated that an additional impairment need not even reach the "severe" limit in order for a claimant to satisfy the final requirement of Listing 12.05(C). *Fanning*, 827 F.2d at 633, n. 3 ("We emphasize, however, that a finding of severity is not required to satisfy the more than slight or minimal effect standard."); *see also Edwards v. Heckler*, 755 F.2d 1513 1515 (11th Cir. 1985) (holding that "significant" work-related limitation of function involves something more than "minimal" but less than "severe").

The ALJ found Plaintiff has severe impairments beyond his borderline intellectual functioning. (AR 18.) Specifically, Plaintiff has severe impairments of congenital heart disease, status-post surgical correction, conduct disorder, and a history of attention deficit hyperactivity disorder. (AR 18.) Due to these conditions, the ALJ found Plaintiff limited to sedentary exertional level work comprised of simple routine tasks. (AR 19.) As Plaintiff has severe conditions beyond his borderline intellectual functioning, this element of Listing 12.05C is satisfied. The ALJ's finding that there was no other mental or physical impairment imposing any additional and significant work-related limitation of function was error and that finding is reversed.

**B.     Remand Rather Than An Award of Benefits Is Warranted**

The ALJ did not give any reasons for finding Plaintiff's IQ score of 69 invalid. Dr. Engeln, who rendered the score, gave a facially unclear response about the validity of the test results. As there is ambiguity in the record combined with a complete lack of reasoning as to the ALJ's finding of invalidity, the Court remands for further consideration of Listing 12.05C. The ALJ shall reconsider the validity of Plaintiff's full scale IQ score. In doing so, the ALJ may develop any additional evidence necessary, such as re-contacting Dr. Engeln, if necessary to make a decision. Additionally, the ALJ failed to assess whether there were appropriate deficits in adaptive functioning, which should be expressly considered on remand. The third element requiring an additional impairment that causes significant work-related limitation is satisfied.

## VI.     CONCLUSION

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and REMANDED so the ALJ may conduct further administrative proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment

///

///

///

///

11

in favor of Plaintiff and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

| Dated: | **August 4, 2015** | **/s/ Sheila K. Oberto** |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |